**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AAMIR COOPER,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN UNIVERSITY,<br><br>Defendant. | Civil Action No. 18-cv-1970 (TSC) |

**MEMORANDUM OPINION AND ORDER**

In this employment discrimination action filed *pro se*, Plaintiff alleges that Defendant American University ("AU") terminated his employment because of his race and gender. AU has moved to dismiss Plaintiff's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons explained below, Defendant's motion will be GRANTED in part and DENIED in part.

**I. BACKGROUND**

**A. Work Environment and Termination**

Cooper alleges the following facts, which for current purposes are accepted as true. Cooper is a 26-year-old African American male who, on July 28, 2017, was terminated from his job as an AU police dispatcher. Cooper's firing followed a sexual harassment investigation of him "by Police Director Philip Morse and Human Resource Investigator Santo Scremintti[.]" Compl. at 2.[1]

[1] The page numbers are those assigned by the electronic case filing system.

Cooper claims that AU police officers and supporting staff were permitted to participate in an "exercise program . . . known as (LAWFIT)," where they were "given 1 hour 2 days a week" to exercise "during their work day." *Id*. Cooper "chose swimming in the AU indoor pool." *Id*. In May 2017, he met with AU Police Captain Kevin Barrett on several occasions to discuss his activity at the pool and "some complaints about [him] from the pool." Compl. at 3-4. On May 23, 2017, Barrett "notice[d]" Cooper's tattoo, shared that he had a tattoo as well, and stated: "Maybe somebody at the pool saw that you had a tattoo and was alarmed by that." *Id*. at 3. Barrett suggested "nonchalantly" that Cooper "shouldn't go to the pool until things blow over." *Id*. Barrett also told Cooper that he would let "AU Police Sgt. Salaazar and Lt. Greenlee" know "about our conversation and bring them up to date about what was going on[.]" *Id*.

Baffled by Barrett's repeated questions regarding whether "anyone" had reached out to him about the complaints at the pool, Cooper "took it upon" himself "to refrain from going to the pool for 30 days. During that time, he reported to work, "business as usual." *Id*. at 4. He did not receive a "written memo" from his supervisors or the Human Resources department "directing" him "not to go to the pool [or] concerning the substance of the complaint" Barrett had referenced. Cooper found out that "the AU gym fee was still being deducted" from his paycheck, so he returned to the pool on June 27, 2017. The next day, Cooper's supervisor directed him to Morse's office, where Morse "slammed a memo on the table" and demanded that Cooper read and sign it, "stating you were ordered not to go to the pool." *Id*. at 4. Cooper was placed on administrative leave and escorted off AU's property. He was "ordered to . . . hand over" his employee ID and told that he was "not allowed back on [AU] property." *Id*.

After his termination, Cooper learned from Morse "that a white female life guard had filed a complaint with the AU Human Resource Department," claiming that Cooper "had commented to her that she was pretty" and "resembled a bay watch model," and "asked . . . if she had a social media account" and if "her boyfriend [was] black[.]" Compl. at 2. Morse told Cooper that he "had committed sexual harassment during [his] exercise break while swimming in the American University indoor pool." *Id.*

The termination letter, dated July 28, 2017, is based on "the findings of Human Resources investigation into allegations of inappropriate conduct." It lists four specific allegations made by a student worker at the Reeves Aquatics Center and mentions "additional allegations of inappropriate comments and behavior" by "four other individuals" discovered during "the course of investigating" the initial complaint. Compl. Attachment, ECF No. 1 at 8. In a written response, Cooper refuted the specific allegations and claims he did not know about "the unknown white female['s] complaint" prior to his termination. *Id.* at 10.

**B. EEO Activity and Commencement of Lawsuit**

At some point, Cooper filed charges with the U.S. Equal Employment Commission (EEOC), which mailed Cooper a Dismissal and Notice of Rights on May 25, 2018. Compl. Attachment, ECF No. 1-1. The EEOC was "unable to conclude that the information obtained establishes violations of the statute." *Id.* at 1. Cooper filed this action on August 23, 2018. His five causes of action are captioned in the Complaint as follows:

Count 1, Race Discrimination in Violation of Title VII

Count 2, Sex Discrimination in Violation of Title VII

Count 3, Disparate Treatment in Violation of Title VII

Count 4, Defamation of Character in Violation of Title VII[2]

Count 5, Intentional Infliction of Emotional Distress.

**II. LEGAL STANDARD**

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" and "the grounds for the court's jurisdiction" so that a defendant has fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (citing cases). Rule 12(b)(6) permits a party to move for dismissal on the grounds that the complaint has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A plaintiff's factual allegations need not establish all elements of a prima facie case, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28-29 (D.D.C. 2010), but they "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citations omitted). A complaint containing only "[t]hreadbare

---

[2] Title VII does not proscribe defamation; therefore, Count 4 will be construed as a common law claim of defamation.

recitals of the elements of a cause of action, supported by mere conclusory statements" cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. In addition, the presumption of truth accorded factual allegations at this stage does not apply to a plaintiff's legal conclusions in the complaint, including those "couched" as factual allegations. *Id*. (quoting *Twombly*, 550 U.S. at 555).

"In ruling on a motion to dismiss, the Court may consider not only the facts alleged in the complaint, but also documents attached to or incorporated by reference in the complaint and documents attached to a motion to dismiss for which no party contests authenticity." *Demissie v. Starbucks Corporate Office & Headquarters*, 19 F. Supp. 3d 321, 324 (D.D.C. 2014). Therefore, "'where a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment' . . . 'Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied'. . . Moreover, a document need not be mentioned by name to be considered 'referred to' or 'incorporated by reference' into the complaint." *Strumsky v. Washington Post Co*., 842 F. Supp. 2d 215, 217-18 (D.D.C. 2012) (citations omitted); *see also Long v. Safeway, Inc.*, 842 F. Supp. 2d 141, 144-45 (D.D.C. 2012), *aff'd*, 483 Fed. App'x. 576 (D.C. Cir. 2012).

## III. ANALYSIS

AU initially moved to dismiss the Title VII claims on the basis that Cooper had failed "to allege" that he exhausted his administrative remedies. Def.'s Mem. at 3. AU has withdrawn that defense, *see* Reply at 1, ECF No. 16, which in any event is contrary

to law. In Title VII cases, failure to exhaust administrative remedies is an affirmative defense that "the defendant bears the burden of pleading and proving[ ]." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997); *see Fort Bend Cty., Texas v. Davis*, No. 18-525, --- S.Ct. ---, 2019 WL 2331306, at *2 (U.S. June 3, 2019) (holding that "Title VII's charge-filing instruction is not jurisdictional," and its [p]rerequisite[ ] to suit" is "properly ranked among the array of claim-processing rules that must be timely raised [by the defendant] to come into play"); *Moore v. D.C.*, 445 Fed. App'x 365, 366 (D.C. Cir. 2011) (per curiam) ("A [Title VII] plaintiff need not plead exhaustion in his complaint.") (citing *Colbert v. Potter*, 471 F.3d 158, 165 (D.C. Cir. 2006) (other citation omitted)).

AU maintains that Cooper has failed to state claims of defamation (Count 4) and intentional infliction of emotional distress ("IIED") (Count 5), and that the defamation claim is in any event time-barred. Reply at 3-6. For the reasons explained below, the court mostly agrees, and those claims will be dismissed.

**A. Defamation**

To state a defamation claim under District of Columbia law, Cooper must allege facts establishing "(1) that he was the subject of a false and defamatory statement; (2) that the statement was published to a third party; (3) that publishing the statement was at least negligent; and (4) that [he] suffered either actual or legal harm." *Farah v. Esquire Magazine*, 736 F.3d 528, 533-34 (D.C. Cir. 2013). At the motion-to-dismiss stage, courts must construe *pro se* filings liberally and read "all" of them "together." *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999); *see id.* (holding that the district court abused its discretion in failing "to consider [a] complaint in light of

[the plaintiff's] reply to the motion to dismiss," and "in refusing to consider" the reply as "an amendment to [the] original complaint").

In his opposition, Cooper alleged sufficient additional facts to survive AU's motion to dismiss his defamation claim under Rule 12(b)(6). *See* Pl.'s Opp'n at 11 (alleging that AU Investigator Scrimenti "informed [public] pool patrons" that Cooper "had committed an act of sexual harassment at the AU pool," and casts suspicion upon Cooper by distributing "pieces of note paper" containing Cooper's name, asking to be contacted immediately if the patrons "observed" Cooper "doing anything suspicious," and describing Cooper as "the black guy with the strange tattoos"). However, as an alternative ground for dismissal, AU argues that Cooper's defamation claim is untimely, and the court agrees.

Under District of Columbia law, defamation claims must be brought within one year of the alleged defamatory statement. D.C. Code § 12-301(4). Cooper filed this action on August 23, 2018; therefore, the defamation claim survives only if the predicate statements were made on or after August 23, 2017. Cooper does not specify when the statements were made but he alleges they occurred during the investigation that culminated in his firing on July 28, 2017. The statements were set out in the Termination Letter. Consequently, Cooper had at the latest until July 28, 2018, to bring his defamation claim, but did not file this action until 25 days later, rendering the claim untimely. Accordingly, Count 4 of the Complaint is dismissed.

**B. IIED**

Under District of Columbia law, claims of intentional infliction of emotional distress require a showing that the defendant "engaged in extreme or outrageous

conduct which intentionally or recklessly caused . . . severe emotional distress." *McManus v. MCI Commc'ns Corp.*, 748 A.2d 949, 958 (D.C. 2000). "In the employment context," moreover, such conduct "must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Elhusseini v. Compass Grp. USA, Inc.*, 578 F. Supp. 2d 6, 23 (D.D.C. 2008) (quoting *McManus*, 748 A.2d at 958). Cooper's factual allegations are insufficient to state an IIED claim. Accordingly, Count 5 of the Complaint is dismissed as well.

For the foregoing reasons, it is

**ORDERED** that Defendant's Motion to Dismiss, ECF No. 7, is **GRANTED** as to the common law claims of Defamation (Count 4) and Intentional Infliction of Emotional Distress (Count 5), and **DENIED** as to the Title VII claims (Counts 1-3).

Date: June 19, 2019

Tanya S. Chutkan
TANYA S. CHUTKAN
United States District Judge